UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FOSHAN WUYINGTUI TRADING CO. LTD., | § § § | |
| *Plaintiff,* | § § § | Civil Action No. 3:24-CV-2416-X |
| v. | § § | |
| JCWIN AUTO CORP, | § § | |
| *Defendant.* | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the parties' claim construction briefing. (Docs. 47, 49, 50).

After reviewing the briefing, the supporting material filed with the briefing, and the

relevant caselaw, and having further considered the parties' arguments at the claim

construction hearing, the Court hereby construes terms and phrases of the claims of

the patent in suit.

### I.    Background

This is a patent infringement case. JCWIN Auto Corp. ("JCWIN") asserts

Foshan Wuyingtui Trading Co. Ltd. ("FWT") has infringed U.S. Patent No.

11,142,056 (the "'056 Patent"). The parties dispute the meaning of certain terms of

claims of the '056 Patent. The Court hereby resolves these disputes, construing the

terms identified by the parties.

### II.    Principles of Law

The construction of patent claim terms "is exclusively within the province of

1

the Court."[1]  The Court construes only the terms "that are in controversy, and only to the extent necessary to resolve the controversy."[2]

The words of a claim are generally given their ordinary and customary meaning.[3]  The ordinary and customary meaning is the meaning the claim term would have to a person of ordinary skill in the field of technology of the invention at the time of the invention.[4]

The ordinary meaning "may be readily apparent even to lay judges," and in this situation claim construction "involves little more than the application of the widely accepted meaning of commonly understood words."[5]  In these situations, general purpose dictionaries are useful.[6]  But, in many cases, claim terms have a particular meaning in a field of technology.[7]  To identify the particular meaning in a field of technology, the Court looks to sources of meaning available to the public that show what a person of ordinary skill in the technology would have understood disputed claim language to mean.[8]  These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic

---

[1] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

[2] *Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

[3] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

[4] *Id.* at 1313.

[5] *Id.* at 1314.

[6] *Id.*

[7] *Id.*

[8] *Id.*

evidence concerning relevant scientific principles, the meaning of the technical terms, and the state of the art."[9]

The specification, in particular, "is the single best guide to the meaning of a disputed term."[10] The "specification includes both the written description and the claims of the patent."[11] The specification also includes the patent's figures.[12]

The prosecution history, in turn, "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."[13] Because it represents an ongoing negotiation between the patent examiner and the inventor, rather than the final product of that negotiation, however, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes."[14]

As mentioned, the Court may also rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.[15] But extrinsic evidence in general is less reliable than the patent and its prosecution history in determining

---

[9] *Id.*

[10] *Id.* at 1315.

[11] *Cisco Sys., Inc. v. TQ Delta, LLC*, 928 F.3d 1359, 1362 (Fed. Cir. 2019) (cleaned up).

[12] *See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1361 (Fed. Cir. 2002).

[13] *Phillips*, 415 F.3d at 1317.

[14] *Id.*

[15] *Id.*

how to read claim terms.[16]  In short, extrinsic evidence may be useful, but reliance on it is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence."[17]

### III.    Construction of Terms and Phrases of the Asserted Patent

#### A.    Person of Ordinary Skill

As noted above, the words of a claim are usually given their ordinary and customary meaning, that is, the meaning the words would have to a person of ordinary skill in the field of technology of the invention at the time of the invention.[18] In their claim construction briefing, neither of the parties addressed the relevant level of ordinary skill in the field of the invention at the time of the invention.  At the hearing, in response to the Court's questions JCWIN and FWT agreed that a person of ordinary skill in the field of technology of the '056 Patent would have an undergraduate degree in mechanical engineering and one or two years of relevant experience related to product design or automotive accessory design.[19]  As a result, the Court construes the terms and phrases of the '056 Patent from that perspective.

#### B.    The '056 Patent

The Court construes terms and phrases of the '056 Patent as follows.

---

[16] *Id.* at 1318.

[17] *Id.* at 1319.

[18] *See id.* at 1312.

[19] Doc. 65 at 6:14–8:5.

### 1.   "laterally running" (Claims 1, 12, 15)

The parties dispute the meaning of "laterally running" as it is used in Claims 1, 12, and 15. JCWIN asserts the phrase should be construed as "extending in a lateral direction."   FWT asserts the phrase should be construed as "extending continuously from end to end."

JCWIN argues the claims use "laterally running" to "describe the *directional orientation* of a component" while FWT seeks to impose an additional requirement of *continuous, uninterrupted extension from one end to the other.*"[20]   According to JCWIN, nothing in the claim language suggests "laterally running" requires a component to extend continuously from end to end.[21]   Furthermore, it argues, the specification consistently uses "laterally running" to describe the orientation of components relative to the truck bed and other structural elements.[22]

FWT argues, with respect to this term, that the parties agree that it means, at least in part, extending in a direction, and that the parties disagree only about whether the term requires "extending *continuously* from end-to-end."[23]   According to FWT, the claim language describes the claimed slats "extending continuously from slat end to slat end."[24]   FWT points out the specification does not use the term "laterally running" except in the claims.[25]   But, it says, Figures 5 and 6 depict slats

---

[20] Doc. 47 at 11.

[21] *Id.* at 12.

[22] *Id.*

[23] Doc. 49 at 8.

[24] *Id.*

[25] *Id.*

running from end-to-end, *i.e.*, continuously from truck bed rail to truck bed rail.[26] FWT focuses on use of the word "running," arguing it includes an inherent continuity aspect over a defined space or time period.[27]  FWT also argues that the center wall must also extend from end-to-end across the length of the slat because the patentee chose to use the same term, "continuously running," to describe the center wall.[28] According to FWT, its construction would not exclude any disclosed embodiment because there are no disclosed embodiments where the components of the slat are not continuously extending from end-to-end.[29]

First, consider the claims. Claims 1, 12, and 15 each recite "laterally running" without using this phrase in a way that requires the terms the phrase modifies to extend from truck bed rail to truck bed rail. Claim 1, for example, describes "the slats including" three things that are modified by the phrase "laterally running": "a laterally running front side," "a laterally running rear side," and "a laterally running . . . center wall."  The parties agree that "laterally running" in this context means, at least, that each of the front side, rear side, and center wall extend in a direction that is lateral compared to the truck bed, in other words towards a rail.  But, critically, "laterally running" does not inherently denote the starting or ending point for the front side, rear side, and center wall.  Neither does Claims 1, 12, or 15 identify those points.

---

[26] *Id.* at 9.

[27] *Id.* at 10.

[28] *See id.* at 11.

[29] *Id.* at 11–12.

The claims do effectively describe the *slats* as extending from rail to rail by describing the slats as slidably engaging the rails that are arranged along the truck bed side tops.[30]   But the claims do not recite the front side, rear side, or center wall of the slats in the same way.   Each of these parts of the slat is introduced with "the slat *including*."   Notably, "includes" is a patent law term of art that does not foreclose additional elements that need not satisfy the stated claim limitation.[31]   Thus, while a slat must have portions that meet the requirements of a "laterally running" front side, rear side, and center wall, the slat need not only have those laterally running features.

Next, consider the specification.   As the parties note, outside the claims the specification does not use the phrase "laterally running" or the term "running."   The Abstract and the Brief Description of the Invention do describe the slats as "residing laterally between the rails."   This language, standing alone, does not necessarily define the slats as extending from rail to rail, and anyway this language does not relate specifically to the front side, rear side, or center wall of a slat.   Furthermore, while Figure 6 includes a cross-section of a slat, Claims 1, 12, and 15 do not identify expressly that the slats must include the same cross-section from one rail to the other. And to the extent that FWT argues that the only disclosed embodiment inherently includes this feature, FWT admits, elsewhere in its brief, that, "even where a patent describes only a single embodiment, claims will not be read restrictively unless the

---

[30] *See, e.g.*, Claim 1 (reciting the "slats residing laterally between the rails and slidably engaging the rails").

[31] *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1284 (Fed. Cir. 2005).

patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."[32]  Here, in short, the patentee did not demonstrate a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.  "Laterally running" does not inherently require extending from truck bed side to truck bed side, and there is nothing in the specification demanding this narrower construction.

Finally, the extrinsic evidence does not point in only one direction (no pun intended).  One common meaning of the word "lateral" is "extending from side to side,"[33] but it may also mean "directed toward, or coming from the side,"[34] "Running," likewise, does not necessarily mean extending *from one truck bed rail to another*, even if it may mean "continuous."[35]  Or consider football.  To throw a lateral, the quarterback need only throw the ball in a not forward direction.  He doesn't have to throw it all the way to the sideline.

For all these reasons, the Court construes "laterally running" as "extending in a direction toward a rail."

### 2. "a center wall" (Claims 1, 15)

The parties dispute the meaning of "a center wall" as it is used in Claims 1 and 15.  JCWIN asserts the phrase should be construed as "the structural middle wall of a slat, comprising a multipart wall-like structure that includes internal geometry

---

[32] *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) (cleaned up.)

[33] *Lateral*, Merriam-Webster Dictionary (FWT285).

[34] *Id.*

[35] *Running*, Merriam-Webster Dictionary (FWT359).

such as the C-shaped center portion and associated vertical structures." FWT asserts the phrase should be construed as "one or more center wall."

According to JCWIN, its construction "resolves the parties' dispute without importing extraneous limitations."[36] It suggests FWT's construction "invites the erroneous inference that a center wall must be a monolithic divider, excluding the multipart internal geometry expressly disclosed in the specification."[37] For support for its proposed construction, JCWIN cites Figures 4–6 of the '056 Patent.[38]

FWT contends JCWIN's construction "is no more than an unnecessary rephrasing of the disputed terms and improperly reads limitations from the specification into the claims."[39] Moreover, FWT says, "a center wall" in the singular should be construed as "one or more center wall" because the "general rule[ ]" is that "a" in a patent claim carries "the meaning of 'one or more.'"[40]

FWT is correct that JCWIN's proposed construction improperly reads limitations from the specification into Claims 1 and 15.[41] While, notably, Claim 12 already describes "the center walls include laterally running C-shaped center portions open to one side," Claims 1 and 15 do not include comparable language.

---

[36] Doc. 47 at 9.

[37] *Id.*

[38] Doc. 50 at 4.

[39] Doc. 49 at 13.

[40] *Id.* (quoting *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008)).

[41] *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001) (noting that "one of the cardinal sins of patent law" is "reading a limitation from the written description into the claims").

As for FWT's proposed construction, JCWIN "does not dispute" the general presumption that "a" may mean "one or more." Furthermore, JCWIN is simply incorrect that FWT's proposed construction somehow "exclud[es] the multipart internal geometry expressly disclosed in the specification."[42] Anyway, the claims define the scope of patent protection.[43]

For all these reasons, the Court construes "a center wall" as "one or more than one center wall."

### 3.    "center walls" (Claims 12, 15)

The parties dispute the meaning of "center walls" as it is used in Claims 12 and 15. JCWIN asserts the plural usage "reflects multiple slats." FWT asserts the phrase should be construed as "more than one center wall."

JCWIN argues the "specification describes each slat as having one center wall" and that the "figures consistently depict a single center wall per slat."[44] Thus, it argues, the "[p]lural usage ('center walls') reflects multiple slats," rather than "a different structure" where each slat includes multiple center walls.[45]

FWT, by contrast, argues "center walls" requires "two or more" center walls.[46] According to FWT, "nothing in the claim language or the specification compels a departure from the general rule" that a claim element recited in the plural requires

---

[42] Doc. 47 at 9.

[43] *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009).

[44] Doc. 47 at 9.

[45] *Id.*

[46] Doc. 49 at 14.

two or more of that element.[47]  As a result, FWT argues, Claims 12 and 15 should be construed to cover "slats with multiple center walls per slat, i.e., more than one center wall."[48]

While "center walls" certainly means "two or more" center walls, it does not follow that Claims 12 and 15 require slats with multiple center walls per slat.  The Federal Circuit has held that, "[g]enerally, a construction that would exclude a disclosed embodiment . . . is not preferred."[49]  Here, FWT's proposed construction would exclude every embodiment disclosed in the '056 Patent, all of which include one center wall per slat.[50]  Thus, FWT's proposed construction is not preferred. Moreover, the claims do not require its construction.  While Claims 12 and 15 recite "center walls" in the plural, these claims also recite "a multiplicity of slats."  Thus, while Claims 12 and 15 each require more than one center wall, they do not clearly require *each slat* to include more than one center wall.  As a result, the Court discerns no reason to adopt a non-preferred construction that would exclude all disclosed embodiments.

Finally, while FWT criticizes JCWIN's position as attempting to limit the scope of the claims to the disclosed embodiments without evidence of clear intention by the patentee to do so, JCWIN's more modest position is that, consistent with governing authority, the Court normally should not adopt a construction that excludes a

---

[47] *Id.*

[48] *Id.*

[49] *Apple Inc. v. Int'l Trade Comm'n*, 169 F.4th 1363, 1382 (Fed. Cir. 2026).

[50] *See, e.g.*, Figures 6 and 8.

disclosed embodiment.  Anyway, construing the claims to require *at least one* "center wall" per slat does not limit the scope of the claims to the disclosed embodiments.

For all these reasons, the Court construes "center walls" as "each of the multiplicity of slats includes one or more than one center wall."

### 4.    "C-shaped center portion" (Claim 12)

The parties dispute the meaning of "C-shaped center portion" as it is used in Claim 12. JCWIN asserts the phrase should be construed as "an open, partially enclosed structural shape forming part of the center wall, including inwardly extending lips that define an open channel."  FWT asserts no construction is necessary and that the phrase's plain and ordinary meaning applies.

According to JCWIN, the Court should construe the phrase "to prevent an unduly narrow interpretation inconsistent with the intrinsic record."[51]  Also, it says, without a construction there is a risk of "excluding disclosed embodiments."[52]

For its part, FWT argues no construction is necessary because its meaning is "readily apparent and well-understood."[53]  It also says JCWIN's construction "would only serve to confuse the jury" and also violates the doctrine of claim differentiation given that aspects of "including inwardly extending lips that define an open channel" are "already explicitly recited in various dependent claims."[54]

---

[51] Doc. 47 at 10.

[52] *Id.*

[53] Doc. 49 at 17.

[54] *Id.* at 17–18 (citing, e.g., Claim 14).

12

The Court agrees with FWT that no construction is necessary. Here, JCWIN's proposed construction would contradict the idea that claim construction is "not an obligatory exercise in redundancy."[55]  In short, the Court is confident jurors will understand the meaning of "C-shaped center portion" without the Court explaining its plain and ordinary meaning. The Court is also unable to identify any risk of excluding any disclosed embodiment. And the Court is unable to identify any difference in the parties' positions with respect to the meaning of this phrase.

For all these reasons, the Court concludes that no construction of "C-shaped center portion" is necessary.

### 5.    "end caps attached . . . through the C-shaped center portion" (Claim 12)

The parties dispute the meaning of "end caps attached . . . through the C-shaped center portion" as it is used in Claim 12. JCWIN asserts the phrase should be construed as end caps "attached in a manner in which a securing structure engages the internal geometry of the C-shaped center portion of the center wall." FWT asserts no construction is necessary and that the phrase's plain and ordinary meaning applies.

Supporting its proposed construction, JCWIN says the "specification and figures describe structural engagement with the center wall but do not require

---

[55] *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

traversal of a hollow interior."[56]  Moreover, it says, "[n]othing in the claims requires a penetration-through-empty-space limitation."[57]

FWT contends no construction is necessary because the phrase's "plain and ordinary meaning is readily apparent and well-understood."[58]  It says JCWIN's proposed construction is redundant, but it also says JCWIN's construction "improperly limits the claim to a specific embodiment, such as attachment via a fastener."[59]  Finally, it argues that, to the extent JCWIN's construction includes a fastener, it violates the doctrine of claim differentiation.[60]

The Court faintly makes out two ships passing in the night through a dense fog.  JCWIN's proposed construction does not expressly require a fastener, and, if it doesn't, then some of FWT's arguments are irrelevant.  Likewise, FWT has not proposed any construction, and so JCWIN's suggestion that FWT improperly requires complete "traversal of a hollow interior" similarly misses the mark.

With all that said, the Court believes the question of whether this phrase needs to be construed comes down to what positions the parties may take regarding what the phrase means.  At the hearing, the Court explored whether the parties have or will have different positions by asking, if the Court were to construe this phrase, whether it should construe "through" to mean "using," "by engaging the internal

---

[56] Doc. 47 at 11.

[57] *Id.*

[58] Doc. 49 at 18.

[59] *Id.*

[60] *Id.*

geometry of," or "by passing completely through an interior space defined by." According to JCWIN, the Court should pick the second possibility, "by engaging the internal geometry of."[61]  According to FWT, the Court should pick the first possibility, "using."[62]  As a result, the Court believes a construction is necessary.

As for the last of the three possibilities, neither the claim language nor the rest of the specification requires passing completely through the C-shaped center portion from one end to another.  As for the claim language, the relevant phrase says the end caps are "attached . . . through the C-shaped center portion."  Claim 18, by contrast, more clearly requires something to pass completely through something when it says "leaving open gaps in the front side and the rear side for the joiner members to pass through."  As for the rest of the specification, the written description explains how the end cap may be attached to the slat using a fastener that is preferably a screw:

> One of the end caps 46 is attached to each slat 20 by a fastener 48. The fastener 48 is preferably a screw engaging the "C" shaped center middle wall 36 (see FIG. 6) of each slat 20, and more preferably a stainless steel screw, for example, 304 stainless steel.

Significantly, as shown by the related figures, the screw does not clearly pass all the way through the "C" shaped center middle wall 36 of slat 20.  The screw is short and the slat is long (whatever portion of the slat the "C" shaped center middle wall occupies):

---

[61] Doc. 65 at 32:8–33:21.

[62] *Id.* at 33:25–37:21.



FIG. 4

FIG. 5

FIG. 6

As a result, a construction requiring "through" to mean "by passing completely through an interior space defined by" would seem to be contrary to the general principle that gives preference to a construction that does not exclude a disclosed embodiment.[63]  And the Court discerns no reason to depart from the preference not to exclude a disclosed embodiment.

As for the second of the three possibilities, neither the claim language nor the rest of the specification requires the end caps to engage internal geometry of the C-shaped center portion.  This appears to be, as suggested by FWT, an attempt to limit

---

[63] *See Apple Inc.*, 169 F.4th at 1382.

16

the scope of this claim language to use of a fastener, which, as shown above, is a disclosed and even preferred embodiment.  But, as discussed above, "even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."[64]  Here, the patentee did not demonstrate a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.  The claim uses the term "through" rather than more clearly describing engaging internal geometry, for example threads.  And in the specification the use of a screw is merely a preferred embodiment.

Finally, with respect to both the second and third possibilities, neither party actually takes the position that the *end caps* are required to engage the interior of the C-shaped center portion of the center wall, let alone that the *end caps* are required to pass entirely through the C-shaped center portion of the center wall.  But that is what the second and third possibilities would require, given that the claim says "end caps attached . . . through the C-shaped center portion."  There is no support in the intrinsic record for the end caps to be attached by the *end caps* engaging the internal geometry of the C-shaped center portion or by the *end caps* passing completely through an interior space defined by the C-shaped center portion.  Even JCWIN's proposed construction identifies the end caps as "attached in a manner in which a *securing structure* engages the internal geometry of the C-shaped center portion of

---

[64] *Innova/Pure Water, Inc.*, 381 F.3d at 1117 (cleaned up).

the center wall."[65]  This is an additional reason to think that "through" in Claim 12 means, simply, "using."

For all these reasons, the Court construes "end caps attached . . . through the C-shaped center portion" as "end caps attached . . . using the C-shaped center portion."

## IV.    Conclusion

For the reasons discussed above, the Court construes terms and phrases of the '056 Patent as described in this Order and as summarized in the attached chart.

**IT IS SO ORDERED** this 24th day of June, 2026.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[65] Doc. 47 at 10 (emphasis added).

**Claim Constructions - '056 Patent**

| Term or Phrase | Court's Construction |
|---|---|
| "laterally running"<br><br>Claims 1, 12, 15 | extending in a direction toward a rail |
| "a center wall"<br><br>Claims 1, 15 | one or more than one center wall |
| "center walls"<br><br>Claims 12, 15 | each of the multiplicity of slats includes one or more than one center wall |
| "C-shaped center portion"<br><br>Claim 12 | no construction necessary |
| "end caps attached . . . through the C-shaped center portion"<br><br>Claim 12 | end caps attached . . . using the C-shaped center portion |